671 So.2d 481 (1995)
STATE of Louisiana
v.
Jerry THORNTON.
No. 94 KA 1470.
Court of Appeal of Louisiana, First Circuit.
October 6, 1995.
*483 William R. Campbell, Jr., New Orleans, for Appellee State of Louisiana.
James H. Looney, Covington, for Appellant Jerry Thornton.
Before SHORTESS, PARRO and KUHN, JJ.
KUHN, Judge.
The defendant, Jerry Thornton, was charged by bill of information with three counts of distribution of cocaine within 1,000 feet of a school, in violation of LSA-R.S. 40:967A(1) and 40:981.3. He pled not guilty[1] and, after trial by jury, was found guilty as charged on all three counts. For each conviction, defendant received a $15,000 fine and a sentence of imprisonment of eighteen years at hard labor, without benefit of parole, probation or suspension of sentence, with credit for time served. The fines and sentences were ordered to run concurrently with each other but consecutively to any other sentence the defendant may be serving. He has appealed, alleging five assignments of error, as follows:
1. The evidence was insufficient to support the defendant's conviction on Count 1.
2. The trial court erred in denying the defendant's pre-trial motion to reveal the identity of the confidential informant.
3. The trial court erred in denying the defendant's motion made during the trial to reveal the identity of the confidential informant.
4. "The trial court erred in denying the defense questions and efforts to secure the actual disguise allegedly worn by the undercover officer."
5. The trial court erred in denying the defendant's motion for a mistrial.

FACTS
During the latter part of 1992, Sergeants Jesse Simon and Jay Strahan of the Slidell Police Department received permission from their superiors to conduct "Operation Masquerade," an undercover operation focusing upon the illegal trafficking of narcotics in an area near the Sweet Shop, a bar located on Washington Avenue in Slidell. Officer Simon disguised himself as a black male by applying brown makeup and a wig, beard, and mustache. After applying this disguise, he drove a brown, 1986 Ford Thunderbird into the area around the Sweet Shop and purchased cocaine. During these transactions, there was a confidential informant (CI) in the front passenger seat. Officer Strahan positioned himself nearby to conduct surveillance.
On the night of December 3, 1992, Officer Simon purchased an alleged cocaine rock from defendant, which formed the basis for Count 1. Officer Simon also purchased rock cocaine from defendant on two separate occasions on the night of December 10, 1992, forming the basis for Counts 2 and 3. These drug transactions involving defendant took place on the street outside the Sweet Shop and were within 1,000 feet of St. Tammany Junior High School.

ASSIGNMENT OF ERROR NO. ONE:
In this assignment of error, defendant contends there was insufficient evidence to support his conviction on Count 1. The standard of review for the sufficiency of the evidence to uphold a conviction is whether or not, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could conclude the State proved *484 the essential elements of the crime beyond a reasonable doubt. See La.C.Cr.P. art. 821; State v. King, 563 So.2d 449, 456 (La.App. 1st Cir.), writ denied, 567 So.2d 610 (La.1990). The Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), standard of review incorporated in Article 821 is an objective standard for testing the overall evidence, both direct and circumstantial, for reasonable doubt. When analyzing circumstantial evidence, LSA-R.S. 15:438 provides the fact finder must be satisfied the overall evidence excludes every reasonable hypothesis of innocence. State v. McLean, 525 So.2d 1251, 1255 (La.App. 1st Cir.), writ denied, 532 So.2d 130 (La.1988).
LSA-R.S. 40:967A(1) provides, in pertinent part:
... it shall be unlawful for any person knowingly or intentionally:
To produce, manufacture, distribute, or dispense or possess with intent to produce, manufacture, distribute, or dispense, a controlled dangerous substance classified in Schedule II; ....
Cocaine is a controlled dangerous substance listed in LSA-R.S. 40:964 Schedule IIA(4).
In his brief to this Court, defendant contends the evidence was insufficient to prove he sold cocaine to Officer Simon on December 3, 1992. We agree. While Officer Simon testified he purchased a twenty dollar cocaine rock from the defendant on December 3, 1992, neither this cocaine rock nor State Exhibit 1 (the Scientific Analysis Report from the crime lab) was introduced into evidence. When the prosecutor attempted to introduce State Exhibit 1 pursuant to LSA-R.S. 15:499 et seq., defense counsel objected on the basis of lack of proper notice; and the trial court sustained the objection. See LSA-R.S. 15:501A. Thereafter, when the prosecutor attempted to have Officer Simon identify the evidence envelope containing the cocaine rock he purchased from the defendant on December 3, 1992, defense counsel again objected. The trial court in effect sustained the objection by indicating if the State could not prove the substance contained cocaine, then the substance was irrelevant and inadmissible. In fact, the defendant correctly notes, during closing argument, the prosecutor discussed only the two cocaine transactions on December 10, 1992 (Counts 2 and 3). Accordingly, we find the trial court should have granted the defendant's motion for post-verdict judgment of acquittal as to Count 1. This assignment of error has merit.
ASSIGNMENTS OF ERROR NOS. TWO AND THREE:
In these assignments of error, defendant contends the trial court erred in denying his motions (both pre-trial and during trial) for disclosure of the identity of the CI.
The Louisiana Supreme Court has recognized the informer privilege. The burden is on defendant to show exceptional circumstances warranting disclosure of the name of the CI. State v. Davis, 411 So.2d 434, 436 (La.1982). The trial court is accorded great discretion in making such a determination. State v. James, 396 So.2d 1281, 1284 (La.1981).
As a general rule, the State is permitted to withhold the identity of the informer from the accused. This privilege is founded upon public policy and seeks to further and protect the public interest and law enforcement by encouraging persons to supply information to the police without fear of reprisal by the person to whom the information pertains. Thus, the identity of an informant should be made known to the accused only when his right to prepare his defense outweighs the need for protection of the flow of information. State v. James, 396 So.2d at 1284. When the State's case shows the informer participated in the crime, his identity should be disclosed to defendant. In such cases, the informer does more than furnish a tip that enables the police to make an arrest. While working with the police, he takes part in the illegal transaction itself. State v. Dotson, 260 La. 471, 256 So.2d 594, 606 (1971) (on rehearing), cert. denied, 409 U.S. 913, 93 S.Ct. 242, 34 L.Ed.2d 173 (1972).
In the instant case, Officer Simon's testimony clearly established the CI did not participate in the crimes. Officer Simon gave the CI strict instructions to remain silent and to refrain from touching any money *485 or drugs. On cross-examination, when asked about the purpose of having a CI in the car with him during the transactions, Officer Simon replied: "To blend me into the surroundings so that if the people looked in the car and saw him, he was from that area, that they would automatically feel comfortable selling to go [sic] me." Because the CI did not participate in these transactions, and defendant has failed to establish exceptional circumstances justifying disclosure, we find no abuse of discretion in the trial court's rulings denying the defendant's motions for disclosure of the identity of the CI.
These assignments of error are meritless.

ASSIGNMENT OF ERROR NO. FOUR:
In this assignment of error, defendant contends the trial court erred in "denying the defense questions and efforts to secure the actual disguise allegedly worn by the undercover officer."
At the trial, Officer Simon explained his disguise consisted of brown makeup and a wig, beard, and mustache. Officer Strahan's wife applied the disguise in a process which took approximately forty-five minutes to an hour. Officer Simon also wore a baseball cap and a flannel shirt. He further explained the windows of the Thunderbird were tinted, the dashboard lights had been turned down, and all of the interior dome lights had been removed so that there was no light inside the car. Officer Strahan took two photographs of Officer Simon wearing his disguise (State Exhibits 6 and 7). State Exhibit 6 was taken with a flash, and State Exhibit 7 was taken without a flash.
During cross-examination of Officer Simon, the following colloquy occurred:
BY MS. YEAGER [DEFENSE COUNSEL]:
. . . . .
Q. Do you happen to have your makeup and wig and everything with you here today?
A. No, ma'am, I don't.
Q. Would it be difficult for you to obtain that? Could someone get that for you?
BY MS. DRAPER [PROSECUTOR]:
Your Honor, I object to this. I don't see any relevance in this. We have a photograph.
[DEFENSE COUNSEL]:
We haven't introduced the photograph into evidence, and the photograph may not exactly portray what Mr. Simon looked like in his disguise.
[PROSECUTOR]:
Your Honor, I object if [defense counsel] is going to ask the State's witness to put on the makeup.
BY THE COURT:
Sustained.
[DEFENSE COUNSEL]:
Note my objection for the record, please.
Thereafter, Officer Strahan testified regarding State Exhibits 6 and 7 and the disguise worn by Officer Simon. At the conclusion of Officer Strahan's testimony, the following colloquy occurred:
[PROSECUTOR]:
In connection with Officer Strahan's testimony, I would offer, file and introduce into evidence what I previously marked as State's Exhibit-6 and 7.
BY THE COURT:
Any objection?
[DEFENSE COUNSEL]:
Yes. I object to the photographs. I don't know how accurately they depict Mr. Simon's appearance on these particular nights. They were taken on one occasion. I think it would be more appropriate to have Mr. Simon actually don the makeup, don the wig for the jury's sake so they could make their own evaluations and not have to deal with photographs. Furthermore, we were never provided copies of these photographs, and that's part of our discovery.
[PROSECUTOR]:
Once again, Your Honor, defense was provided with open file discovery. I can give them open file discovery, but I can't make them come in and do it. Also, the officers have testified that this is how Officer Simon looked on that night. Officer Strahan has testified he took those photographs.
BY THE COURT:

*486 Overrule the objection. Let them come in evidence as marked. Note your objection.
Photographs which illustrate any fact, shed light upon any fact or issue in the case, or are relevant to describe the person, place, or thing depicted, are generally admissible. State v. Burge, 486 So.2d 855, 863 (La.App. 1st Cir.), writ denied, 493 So.2d 1204 (La. 1986).
The trial court has great discretion in permitting or refusing in-court experiments. Usually, however, simple demonstrations by a witness are permissible. The criteria for withholding permission include considerations arising from the possible disruption of orderly and expeditious proceedings or from a lack of similarity between conditions in the courtroom and the actual conditions sought to be retested. State v. Hampton, 326 So.2d 364, 366 (La.1976); State v. Mays, 315 So.2d 766, 768 (La.1975).
In State v. Robertson, 421 So.2d 843, 845 (La.1982), the Supreme Court found no error in allowing a demonstration of a gun at the victim's temple. In State v. Mays, 315 So.2d 766, 768-769 (La.1975), the Supreme Court found the trial court erred (although it characterized the error as harmless) in not requiring a witness to simulate smoking a cigarette in the same manner that he testified he had simulated smoking a marijuana cigarette. The demonstrations proposed in Robertson and Mays are easily characterized as simple demonstrations. Disruption of courtroom proceedings and/or similarity of conditions were not really at issue therein. On the other hand, State v. Hampton, 326 So.2d at 366, involved a victim screaming; and State v. Pravata, 522 So.2d 606, 610-612 (La.App. 1st Cir.), writ denied, 531 So.2d 261 (La.1988), involved a demonstration of blood disbursement characteristics. These demonstrations were disallowed in Hampton and Pravata due to the possibility courtroom proceedings would be disrupted and/or the courtroom conditions for the demonstration could not sufficiently approximate the conditions of the crime scene.
In his brief to this Court, defendant first contends, because State Exhibits 6 and 7 were taken in Officer Strahan's home, they did not reflect the lighting actually present at the scene of the drug transactions. He further contends defense counsel "asked about the makeup and wig in an effort to present these items to the jury so that the jury could evaluate whether or not someone would actually mistake Simon for a black man." Finally, he concludes: "When defense counsel noted that the photos had not been introduced yet and they might not depict fully the situation, the State changed the objection to a modeling of these items.... It should be noted that the cases regarding demonstrations are not relevant to this issue. Defense counsel did not ask the witness to model anything."
Concerning State Exhibits 6 and 7, while these photographs did not reflect the lighting conditions at the scene of the drug transactions, they were offered for the purpose of showing how Officer Simon appeared in his disguise in good light (State Exhibit 6) versus low light (State Exhibit 7), and on this basis they were relevant and admissible. Defense counsel's objection that these photographs had not been provided during discovery is meritless, as the prosecutor indicated the defense was given open file discovery and, therefore, the photographs could have been viewed by defense counsel at any time prior to trial. In fact, if defense counsel had viewed the photographs during discovery, the opportunity to request the State to furnish the brown makeup and the wig, beard, and mustache prior to trial would have been available to the defense. Furthermore, although defendant's brief indicates defense counsel never requested Officer Simon to model anything, the second objection by defense counsel as quoted above demonstrates defense counsel thought "it would be more appropriate to have Mr. Simon actually don the makeup, don the wig for the jury's sake so they could make their own evaluations and not have to deal with photographs." We find defense counsel's request called for more that a simple demonstration by Officer Simon. Officer Simon had not brought the makeup, wig, etc., to the courthouse. In order for him to model the disguise for the jury, Officer Strahan's wife would have had to come to the courthouse and apply the *487 disguise as she had done during Operation Masquerade. Moreover, even if Officer Simon had modeled his disguise in court, there certainly would have been no similarity between the courtroom demonstration and the crime scene, as the instant drug transactions took place on the street outside the Sweet Shop, at night, with Officer Simon seated in a vehicle which had tinted windows and no interior lights. Under these circumstances, we find no abuse of discretion by the trial court in allowing State Exhibits 6 and 7 to be introduced into evidence and in refusing to require Officer Simon to retrieve and/or model his disguise for the jury.
For the above reasons, this assignment of error is meritless.
ASSIGNMENT OF ERROR NO. FIVE:
In this assignment of error, defendant contends the trial court erred in denying his motion for a mistrial. Specifically, the defendant contends that the prosecutor made an improper reference to his failure to testify.
During the prosecutor's rebuttal closing argument, the following colloquy occurred:
[PROSECUTOR]:
Ladies and gentlemen, as the Judge explained to you earlier, the State makes two closing arguments. It's called the initial close and the second close. The reason for that is the State has the burden. The State is the one that has to prove all the elements. The State has to put on witnesses which the State has done and you have heard uncontradicted testimony of what happened on December 10th, 1992.
And [defense counsel] says, why did Jerry Thornton sell to Jesse Simon. I don't know why he would sell drugs to Jesse Simon.
[DEFENSE COUNSEL]:
I have to make an objection.
(AT THIS TIME, THE FOLLOWING DISCUSSION WAS HELD AT THE BENCH:)
[DEFENSE COUNSEL]:
Uncontradicted means that the defendant didn't take the stand, and, therefore, you should make something out of it.
[PROSECUTOR]:
Uncontradicted meaning no witnesses were on the stand. It's well-founded. The District Attorney's Office can state uncontradicted testimony without it being
BY THE COURT:
I note your objection, but I don't believe that's a reference to the fact that he did not take the stand.
[DEFENSE COUNSEL]:
There were no other witnesses available. The only person who could have testified was the defendant. It's saying because the defendant did not take the stand
[PROSECUTOR]:
I'm saying it's well within my rights to say that, and there are cases to back me up.
[DEFENSE COUNSEL]:
I'm asking for a mistrial.
BY THE COURT:
I understand, and I'm noting it for the record.
[DEFENSE COUNSEL]:
Note it for the record.
La.C.Cr.P. art. 770 provides, in pertinent part:
Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
* * * * * *
(3) The failure of the defendant to testify in his own defense; ...
* * * * * *
An admonition to the jury to disregard the remark or comment shall not be sufficient to prevent a mistrial. If the defendant, however, requests that only an admonition be given, the court shall admonish the jury to disregard the remark or comment but shall not declare a mistrial.
Article 770(3) prohibits both direct and indirect references to the defendant's failure to testify. When the prosecutor makes a direct reference to defendant's failure to take the stand, a mistrial should be *488 declared. In the case of such a direct reference, a reviewing court will not attempt to determine the effect the remark had on the jury. Where the reference to defendant's failure to testify is not direct, the reviewing court will inquire into the remark's intended effect upon the jury in order to distinguish indirect references to defendant's failure to testify (which are impermissible) from general statements that the prosecution's case is unrebutted (which are permissible). State v. Johnson, 541 So.2d 818, 822 (La.1989); State v. Lamark, 584 So.2d 686, 698 (La.App. 1st Cir.), writ denied, 586 So.2d 566 (La.1991).
Clearly, there was no direct reference to defendant's failure to take the stand. However, defendant argues the prosecutor made an indirect reference to his failure to testify and he was the only person (apart from the CI whose identity was never disclosed) who could have disputed Officer Simon's testimony. We disagree. A statement that the State's evidence is uncontradicted is not necessarily a prohibited comment on the defendant's failure to testify. However, when defendant is the only person who can dispute the State's evidence, a reference to testimony as uncontroverted constitutes reversible error. On the other hand, when there are other possible witnesses, an argument that the State's case is unrebutted does not focus the jury's attention on the defendant's failure to testify. State v. Jackson, 454 So.2d 116, 118 (La.1984). According to Officer Simon's testimony, the Sweet Shop was crowded on the night of December 10, 1992. Officer Simon also indicated there were a lot of people standing outside the bar. Therefore, there were numerous potential witnesses who could have testified for defendant. See State v. Jackson, 454 So.2d at 118. Furthermore, to support a defense that he was not the person who distributed cocaine to Officer Simon on two separate occasions on the night of December 10, 1992, defendant could have presented alibi witnesses on his behalf to vouch for his whereabouts on that evening. See State v. Johnson, 525 So.2d 301, 303 (La.App. 1st Cir.1988). Therefore, because defendant was not the sole witness to rebut the State's evidence, the prosecutor's remarks did not focus the jury's attention on defendant's failure to testify. Accordingly, we find that the trial court correctly denied defendant's motion for a mistrial.
This assignment of error is meritless.

PATENT SENTENCING ERROR
We note a patent sentencing error. The instant sentences are illegal because the trial court ordered all eighteen years of each sentence to be served without benefit of parole, probation, or suspension of sentence when the denial of benefits was applicable to only the first fifteen years of the sentence. LSA-R.S. 40:981.3E(1) provides:
On a first conviction, whoever violates a provision of this Section shall be punished by the imposition of the maximum fine and not less than one-half nor more than the maximum term of imprisonment authorized by the applicable provisions of R.S. 40:966 through R.S. 40:970, with the minimum mandatory term of imprisonment being served without benefit of parole, probation, or suspension of sentence, provided in no case shall the term of imprisonment be less than the minimum term provided in R.S. 40:966 through R.S. 40:970.
LSA-R.S. 40:967B(1) provides:
A substance classified in Schedule II which is a narcotic drug, or which is an amphetamine or methamphetamine, shall be sentenced to a term of imprisonment at hard labor for not less than five years nor more than thirty years; and may, in addition, be sentenced to pay a fine of not more than fifteen[2] thousand dollars.
Based on these statutes, the trial court was free to impose up to thirty years at hard labor for each conviction but was mandated to impose not less than one-half of the thirty year maximum sentence. However, the court was authorized to impose the restrictions on parole, probation or suspension of sentence on only the minimum mandatory term of La.R.S. 40:981.3(E)(1), which is fifteen years. State v. Hensley, 606 So.2d 13, *489 14 (La.App. 5th Cir.1992); State v. Brown, 606 So.2d 586, 589 (La.App. 5th Cir.1992), writ denied, 92-2945 (La. 1/28/94), 630 So.2d 786. Therefore, the denial of benefits for the full eighteen years of each sentence for Counts 2 and 3 is illegal.
Accordingly, defendant's conviction and sentence on Count 1 hereby are reversed and he is ordered discharged on only that Count. The defendant's convictions on Counts 2 and 3 are affirmed. For the above reasons, the sentences on Counts 2 and 3 are vacated, and the case is remanded to the trial court for resentencing.
CONVICTION AND SENTENCE ON COUNT 1 REVERSED; DEFENDANT DISCHARGED ON COUNT 1 ONLY; CONVICTIONS ON COUNTS 2 AND 3 AFFIRMED; SENTENCES ON COUNTS 2 AND 3 VACATED; MATTER REMANDED FOR RESENTENCING ON COUNTS 2 AND 3.
NOTES
[1] We note two patent errors. First, the court minutes indicate that the defendant pled guilty at his arraignment on June 21, 1993. The defendant obviously pled not guilty on that date. Furthermore, the court minutes do not indicate that the defendant was re-arraigned after the prosecutor amended the bill of information by changing the date of Count 3 from December 20, 1992, to December 10, 1992. Nevertheless, the defendant does not allege, nor do we find, any prejudice. In any event, failure to re-arraign the defendant was waived, since he did not object before trial. La.C.Cr.P. art. 555; State v. Delatte, 504 So.2d 1067, 1068 n. 1 (La.App. 1st Cir.1987).
[2] LSA-R.S. 40:967B(1) was amended by Acts 1993. No. 969, § 1, to provide for a fine of "not more than fifty thousand dollars."